**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**
**OFFICE OF SPECIAL MASTERS**
No. 08-0866V
Filed: March 7, 2014
(Not for Publication)

* * * * * * * * * * * * * * * * * * * * * * * * * *
| | |
|---|---|
| TERRI S. HOLLIDAY and　　　　　　　* | |
| MICHAEL D. HOLLIDAY,　　　　　　　* | |
| as legal representatives of　　　　　* | Autism; Attorney Fees and Costs; |
| Joshua Jason Holliday, a minor,　　* | Block Billing; Duplicative Billing; |
| 　　　　　Petitioners,　　　　　　　　* | Documentation for Costs; |
| 　　　v.　　　　　　　　　　　　　　　* | Excessive and Unreasonable Fees; |
| 　　　　　　　　　　　　　　　　　　　* | Hourly Rate. |
| SECRETARY OF HEALTH AND　　　* | |
| HUMAN SERVICES,　　　　　　　　　* | |
| 　　　　　Respondent.　　　　　　　　* | |

* * * * * * * * * * * * * * * * * * * * * * * * * *

Richard Gage, Esq., Richard Gage, P.C., Cheyenne, WY, for petitioners.
Heather Lynn Pearlman, Esq., U.S. Dept. of Justice, Washington, DC, for respondent.

## DECISION AWARDING ATTORNEYS' FEES AND COSTS[1]

**Vowell**, Chief Special Master:

　　　On April 29, 2013, petitioners moved for a decision dismissing their petition, acknowledging that insufficient evidence existed to demonstrate entitlement to compensation. I issued my dismissal decision the same day. Decision, issued Apr. 29, 2013. On May 6, 2013, petitioners filed a motion for award of final attorneys' fees and reimbursement of costs. Respondent filed her response on May 23, 2013. Petitioners filed a reply brief on June 5, 2013.

　　　For the reasons outlined below, I find that an award of attorneys' fees and costs in the amount of $8928.40 is appropriate in light of the work performed by Mr. Gage and his firm.

---

[1] Because this unpublished decision contains a reasoned explanation for the action in this case, I intend to post this decision on the United States Court of Federal Claims' website, in accordance with the E-Government Act of 2002, Pub. L. No. 107-347, § 205, 116 Stat. 2899, 2913 (codified as amended at 44 U.S.C. § 3501 note (2006)). In accordance with Vaccine Rule 18(b), a party has 14 days to identify and move to delete medical or other information, that satisfies the criteria in 42 U.S.C. § 300aa-12(d)(4)(B). Further, consistent with the rule requirement, a motion for redaction must include a proposed redacted decision. If, upon review, I agree that the identified material fits within the requirements of that provision, I will delete such material from public access.

## I. Procedural History.

On December 4, 2008, pro se petitioners Terri and Michael Holliday filed a short-form petition, authorized by Autism General Order # 1,[2] under the National Vaccine Injury Compensation Program, 42 U.S.C. § 300aa-10, *et seq.*[3] [the "Vaccine Act" or "Program"], on behalf of Joshua Jason Holliday ["Joshua"].  By filing a short-form petition, petitioners joined the Omnibus Autism Program ["OAP"],[4] thereby asserting that Joshua had an autism spectrum disorder ["ASD"] and that one or more vaccines listed on the Vaccine Injury Table[5] were causal of this condition.

After the conclusion of the OAP test cases, petitioners were ordered, by the then-presiding special master,[6] to inform the court if they intended to continue to pursue their claim.  Order, issued Sept. 13, 2010.  Petitioners responded on October 18, 2010, indicating that they "wish to keep going forward!"  On March 1, 2011, petitioners were ordered to file Joshua's medical records and a statement regarding their theory of causation.  After they failed to respond, a show cause order was issued on July 19, 2011.  Petitioners responded on August 23, 2011, filing only their causation statement.  On December 19, 2011, petitioners were again ordered to file Joshua's medical records and were given a filing deadline of February 16, 2012.

On February 10, 2012, a motion to substitute attorney Richard Gage as petitioners' counsel was received and granted by the Clerk's Office, pursuant to Court of Federal Claims Rule 83.1(c)(4).  A status conference was held with petitioners' new counsel, Mr. Gage, on February 16, 2012, during which he requested more time to discuss this case with petitioners and to determine how they wish to proceed.  Order, issued Feb. 23, 2012.

Petitioners were ordered to inform the court, by no later than April 30, 2012, whether they intended to continue pursuing this case.  Order, issued Feb. 23, 2012.  On April 26, 2012, petitioners requested an extension until May 30, 2012, which was granted.  Order, issued Apr. 27, 2012.

---

[2] The text of Autism General Order #1 can be found at http://www.uscfc.uscourts.gov/sites/default/files/autism/Autism+General+Order1.pdf, 2002 WL 31696785 (Fed. Cl. Spec. Mstr. July 3, 2002).

[3] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755 (1986).  Hereinafter, for ease of citation, all "§" references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2006).

[4] The OAP is discussed in detail in *Dwyer v. Sec'y, HHS*, No. 03-1202V, 2010 WL 892250, at *3 (Fed. Cl. Spec. Mstr. Mar. 12, 2010).

[5] 42 C.F.R. § 100.3 (2011).

[6] This case was originally assigned to Chief Special Master Golkiewicz.  It was reassigned to Chief Special Master Campbell-Smith on September 6, 2012.  It was subsequently reassigned to me on March 8, 2013.

On May 30, 2012, petitioners requested another extension. In their motion, petitioners' counsel noted he had reviewed Joshua's medical records and that petitioners had indicated there were additional records to obtain and review before determining how they will to proceed with their claim. Motion for Extension at 1. Petitioners were granted an extension until July 16, 2012. Order, issued June 4, 2012.

On July 16, 2012, petitioners requested a fourth extension to inform the court of their intentions regarding this case. Petitioners' request was granted, and their deadline extended to August 16, 2012. Order, issued July 30, 2012. On August 16, 2012, petitioners filed exhibits 1 – 10. An Order to Show Cause was issued on August 31, 2012, ordering petitioners to file all remaining medical records, a statement of completion, and an amended petition by no later than October 1, 2012.

Petitioners filed their amended petition and exhibits 11 and 12 on October 1, 2012. Their amended petition was brief and alleged Joshua "suffered a brain injury as a result of vaccinations received on and [*sic*] December 7, 2006." Am. Pet. at 2. Petitioners filed additional medical records on October 19, 2012 and December 7, 2012.

Petitioners were then ordered to file an expert report by no later than April 1, 2013. Order, issued Jan. 30, 2013. On April 4, 2013, a second Order to Show Cause was issued, instructing petitioners to file their expert report by no later than May 6, 2013. On April 29, 2013, petitioners filed a motion to voluntary dismiss their claim, which was granted the same day. Petitioners filed their motion for award of final attorneys' fees and reimbursement of costs on May 6, 2013. Respondent filed her response on May 23, 2013. Petitioners filed a reply brief on June 5, 2013.

## II. Respondent's Objections to Petitioners' Motion for Fees and Costs.

Respondent asserts that the amount of hours billed and the increase in hourly rates sought by petitioners' counsel are "excessive and unreasonable." Additionally, respondent highlighted three problems with petitioners' motion: the use of block billing, duplicative billing, and lack of documentation for petitioners' costs. Respondent urges me to use my discretion and experience to reduce petitioners' request to a reasonable amount.

A. Block Billing.

Respondent notes that petitioners' counsel failed to individually bill different tasks, and instead lumped disparate tasks together in one billing entry. Response at 4-5. The use of block billing is discouraged in the Program because it hampers the ability of the special master to determine whether the amount of time billed was reasonable for the tasks accomplished. *See* Guidelines for Practice under the National Vaccine Injury Compensation Program, § XIV.A.3 ("Each task should have its own line entry indicating the amount of time spent on that task. Several tasks lumped together with one time entry frustrates the court's ability to assess the reasonableness of the request."); *see also Carrington ex rel. Carrington v. Sec'y, HHS*, 99-495V, 2008 WL 2683632, at *9

(Fed. Cl. Spec. Mstr. June 18, 2008) (recognizing that "[l]umping dissimilar activities is not a proper billing practice"); *Lamar ex rel. Lamar v. Sec'y, HHS*, 99-584V, 2008 WL 3845157, at *9 (Fed. Cl. Spec. Mstr. July 30, 2008) (noting the problem of "lumping"); *Savin ex rel. Savin v. Sec'y, HHS*, 85 Fed.Cl. 313, 316-17 (2008) (recognizing lumped tasks as "defects" which "constitute[] an independent basis for reducing hours claimed").

Based on my review of her response, I believe that respondent merely points to block billing as a factor I should consider when determining the amount of reasonable compensation in this case. However, in his reply brief, petitioners' counsel suggests that respondent is requesting I deny the entire fee application because of the use of block billing and notes that no special master has ever denied one of his fee requests because of block billing. Reply at 2-3.

Although a fee request may not have been denied in its entirety, petitioners' counsel has been informed repeatedly and by several special masters that block billing makes review more difficult.[7] Counsel's reluctance to modify block billing practices has resulted in reductions in the fees requested. I acknowledge that if the total time spent on tasks is low, some block billing may be appropriate. However, in this case there are multiple entries over 1.0 hours, involving several tasks that are billed together.

B. Duplicative Billing.

Respondent objects to the duplicative billing found in petitioners' counsel billing records. She points to the May 23, 2012 meeting that Mr. Gage, Mr. Karz-Wagman, and Ms. Stevens all attended as an example.[8] Response at 5. This example of duplicative billing seems to be an exception, not the norm. The billing records indicate that many joint meetings or telephone calls occurred during Mr. Gage's representation of petitioners, but only a few were billed by all participants. Several were only billed by one participant. *Compare* March 29, 2013 telephone call between Mr. Gage and Ms. Nelson *with* March 15, 2012 discussion between Mr. Gage and Ms. Stevens; April 13, 2012 conference between Mr. Gage and Mr. Karz-Wagman; and September 12, 2012 telephone call between Mr. Gage and Mr. Karz-Wagman.

Although holding a large number of interoffice meetings and having multiple people involved in the drafting of pleadings may be excessive,[9] there is nothing unreasonable about occasional conferences to discuss the status of cases.

---

[7] *See, e.g., Vig v. Sec'y, HHS*, No. 01-198V (Fed. Cl. Spec. Mstr. Sept. 11, 2012), http://www.uscfc.uscourts.gov/sites/default/files/opinions/VOWELL.VIG091112.pdf; *Doe/11 v. Sec'y, HHS,* No. XX-XXXV, 2010 WL 529425 (Fed. Cl. Spec. Mstr. Jan. 29, 2010; *Hall v. Sec'y, HHS,* 02-1052V, 2009 WL 3423036 (Fed. Cl. Spec. Mstr. Oct. 9, 2009).

[8] Mr. Karz-Wagman is an attorney who recently began assisting Mr. Gage with Vaccine Act Cases. Ms. Stevens was a paralegal for Mr. Gage. The paralegal time billed by petitioners' counsel in this case is split between PS (Pauline Stevens) and HN (Helen Nelson).

[9] *See Austin v. Sec'y, HHS,* No. 10-372V, 2013 WL 659574, at *14 (Fed. Cl. Spec. Mstr. Jan. 31, 2013) (reducing a fee award because of excessive interoffice communications occasioned by the large number of attorneys and paralegals working on the case).

C. Lacking Documentation for Petitioners' Costs.

In their motion, petitioners submitted an affidavit claiming that they personally incurred $1000.00 in expenses while pursuing this case. Motion-Tab C at 1. No supporting documentation was provided. Respondent correctly notes that it is the obligation of petitioners to provide sufficient documentary support for the fees and costs they are seeking. Response at 5.

Petitioners' counsel attempted to resolve this problem by filing a more detailed affidavit from petitioner Terri Holliday with the reply brief. Although her affidavit provides some documentary evidence, as I discuss in section III.B.1 the support for the requested costs remains insufficient.

D. Excessive and Unreasonable.

Respondent characterizes the 61.5 hours billed by petitioners' counsel, corresponding to a fee request of over $10,000, as "excessive and unreasonable," but she fails to explain what amount of time she considers reasonable for this case.[10] Response at 4. Broad assertions make for colorful reading, but provide little assistance to the special master in understanding just <u>how</u> excessive respondent views the fee request.

Respondent does note in a footnote that the time spent "far exceeds the numbers of hours found reasonable in similarly postured cases." Response at note 6 (citing *Hughes v. Sec'y, HHS*, No. 04-1115V, Order Setting Forth Facts Pertaining to Attorneys' Fees and Costs (Dec. 15, 2010)).[11] However, respondent does not identify which of the four case categories described in the *Hughes* order she feels this case belongs in; nor does she identify which firm's billing practices best matches those of Mr. Gage.[12]

---

[10] Respondent also suggests that the increase in hourly rates requested by petitioners' counsel is unreasonable. This objection is address in section III.A.

[11] The *Hughes* Order was the result of an alternative dispute resolution ["ADR"] process that examined the billing practices of the four law firms with the most OAP cases. The goal of the ADR was to simplify the processing of motions for attorney fees and costs as OAP petitioners moved to dismiss their claims following the conclusion of the test cases by creating matrices for a reasonable number of hours. I was one of the two special masters who undertook the review of billing records for these firms as part of the ADR process. Thus, I am well-versed on the work performed in the cases handled pursuant to this ADR effort. The Order placed cases in different categories, based on the quantity of medical records collected and substantive pleadings filed. For each firm, the number of reasonably billed hours was established for each category of cases. The range in billing amounts reflected the varied business models and case management processes of the four law firms. Within a case category, the number of hours deemed reasonable varied by up to 23 hours for attorney hours and 18.5 hours for paralegal time.

[12] Although this case was part of the OAP, there are several differences between it and the cases analyzed in *Hughes*. For example, the ADR process was focused on those cases where petitioners with retained counsel agreed to dismiss their cases without further litigative effort following the test case decisions. Here, pro se petitioners initially opted to continue to pursue their claim before seeking advice

Respondent supports her assertion that the time billed by petitioners' counsel was "excessive and unreasonable" by focusing on the number and type of pleadings filed by counsel. Response at 4. As I have previously indicated in *Vig*, the reasonable amount of time to be spent in the representation of formerly pro se OAP petitioners cannot be determined by solely looking at filed pleadings. The individual needs of petitioners and the complexity of their medical records can vary considerably from case to case.

In his reply brief, petitioners' counsel notes that Mrs. Holliday was "very motivated" and strongly believes that Joshua suffered a vaccine injury. Reply at 4. From my experience with numerous pro se petitioners, I am aware of the difficulties involved in explaining to parents that there is insufficient evidence to legally support their opinions regarding the cause of their child's autism. Mr. Gage's representation of Mr. and Mrs. Holliday likely saved the court and respondent significant time that otherwise would have been devoted to litigating this case. While his work may not be reflected directly on the docket, petitioners' counsel deserves to be compensated the time spent on this matter. I note that "client contact" hours varied considerably for the four firms involved in the ADR process, and the hours expended on client contact were well-compensated in the matrices developed. *Hughes*, 2010 WL 5558441; *see also Wiffen v. Sec'y, HHS*, No. 03-1223V, 2010 WL 5558348 (Fed. Cl. Spec. Mstr. Dec. 15, 2010).

### III. Determining the Amount of Fees and Costs to be Awarded.

The Vaccine Act authorizes "reasonable attorneys' fees and other costs." § 15(e)(1). The Court of Federal Claims has recognized that it is within the discretion of the special master to determine the reasonableness of a request for attorneys' fees. *Rodriguez*, 91 Fed. Cl. at 462. The special master may reduce a fee request *sua sponte*. *Sabella v. Sec'y, HHS,* 86 Fed. Cl. 201, 208-09, 221 (2009); *Carrington ex rel. Carrington v. Sec'y, HHS*, 85 Fed. Cl. 319, 322 (2008).

I apply the lodestar method, in which a reasonable hourly rate is multiplied by the reasonable number of hours, to determine the amount of attorneys' fees to be awarded. *Avera v. Sec'y, HHS,* 515 F.3d 1343*,* 1347-48 (Fed. Cir. 2008).

A. Attorney Fees.

   1. Hourly Rates.

A reasonable hourly rate is "the rate 'prevailing in the community for similar services by lawyers of reasonably comparable skills, experience, and reputation.'"

---

of counsel and later agreeing to dismiss their case. Also, in the cases reviewed in the ADR process, counsel spent little time on case-specific medical or legal analysis  (*Hughes*, 2010 WL 5558441, at *8) while in this case a significant portion of the time billed was spent reviewing and analyzing Joshua's medical records. Additionally, the working model of a sole practitioner or small law firm is quite different from that of a large, multi-person firm, like those involved in the ADR process.

*Avera*, 515 F.3d at 1348 (quoting *Blum*, 465 U.S. at 896 n.11).  When the majority of an attorney's work is completed outside the District of Columbia and there is a "very significant difference" favoring the forum hourly rate, the rate from the attorney's geographic location is used.  *Avera*, 515 F.3d at 1349 (adopting the exception to the forum rule found in *Davis*[13]).

    (a)  Richard Gage, Esq.

Petitioners request an hourly rate of $260.00 for work performed by Mr. Gage in 2012 and an hourly rate of $270.00 for work performed by him in 2013.  Respondent believes "there is no justification for an [$10] increase" in his hourly rate, but concedes that an adjustment for inflation, a $3 increase, is warranted.  Response at 4 n.5.

In their reply brief, petitioners' counsel argues that the increase is warranted because he "has not had a rate increase since the third quarter of 2011" and that "his overhead has gone up at a much greater rate during that time."  Reply at 3.  Petitioners' counsel also notes that in 2011, Special Master Moran approved a $10 increase in the hourly rates billed by him for 2009 ($240) and 2010 ($250).  Reply at 3-4 (citing *Heinzelman v. Sec'y, HHS*, No. 07-01V, 2011 WL 7463322 (Fed. Cl. Spec. Mstr. Mar. 24, 2011)).

Although I need not award the same hourly rate as my colleagues,[14] I note that Special Master Hastings examined the amount of attorney fees awarded to counsel from Wyoming, and determined that a reasonable hourly rate for the time period 2005-2012 was between $200.00 and $250.00 per hour.  *Lawrence v. Sec'y, HHS*, No. 09-435V, 2013 WL 3146775, at *4 (Fed. Cl. Spec. Mstr. May 28, 2013).  After his review, he opted to award an hourly rate of $260.00 for work performed by Mr. Gage in 2012 and 2013.  *Id.*  Special Master Dorsey has also held that an appropriate 2013 hourly rate for Mr. Gage is $260.00.  *Dingle v. Sec'y, HHS*, No. 08-579V, 2014 WL 630473, at *3 (Fed. Cl. Spec. Mstr. Jan. 24, 2014).

Like my colleagues, I find inadequate justification for an increase of $10.00 in the hourly rate charged by Mr. Gage in 2012 and 2013.  Accordingly, I will award fees based on a rate of $260.00 for all hours billed by Mr. Gage in 2012 and $263.00 for all hours billed in 2013.

    (b)  Harley Karz-Wagman, Esq.

Petitioners request an hourly rate of $190.00 for work performed by Mr. Karz-Wagman in 2012 and an hourly rate of $210.00 for work performed by him in 2013.  Respondent opposes the "unjustified rate increase" sought by petitioners.  Response at 4 n.5.

---

[13] *Davis County Solid Waste Management and Energy Recovery Special Service District v. United States Environmental Protection Agency*, 169 F.3d 755, 758 (D.C.Cir. 1999).

[14] *Hocraffer v. Sec'y, HHS*, No. 99-533V, 2011 WL 6292218, at *11 (Fed. Cl. Nov. 22, 2011).

According to petitioners, the $190 hourly rate was intended to be a temporary rate while Mr. Karz-Wagman worked on his first cases in the Vaccine Program and decided whether he wished to become involved in additional cases.  Reply at 3.  In supporting the increase, petitioners note that he is a 1974 graduate of UCLA law school.  *Id.*  Petitioners did not provide any additional details about Mr. Karz-Wagman's professional background.

In the absence of additional information justifying an hourly billing rate of $210, such as the nature of Mr. Karz-Wagman's prior legal experience and billing rates, I will award an hourly rate of $193.00 for the work performed by him in 2013.[15]  This rate reflects his $190.00 2012 hourly rate adjusted for inflation.[16]

(c) Paralegals - Pauline Stevens and Helen Nelson.

Petitioners request an hourly rate of $135.00 for work performed by paralegals at the law firm during 2012-13.  Unlike the rates requested for Mr. Gage and Mr. Karz-Wagman, respondent did not explicitly oppose the requested paralegal hourly rate.  *See* Response at 4 n.5.

Several of my colleagues recently determined that $100.00 is an appropriate hourly rate for paralegal work performed in Cheyenne, Wyoming in 2012 and 2013.  *Dingle*, 2014 WL 630473, at *3; *Lawrence*, 2013 WL 3146775, at *4.  I have examined their reasoning and agree with their analyses.  Accordingly, I will calculate the amount awarded for paralegal work using an hourly rate of $100.00.

2.  Hours Billed.

To determine a reasonable number of hours, "[a] special master is permitted and even expected to examine a law firm's time sheets and root out 'hours that are excessive, redundant, or otherwise unnecessary.'"  *Davis v. Sec'y, HHS*, 105 Fed. Cl. 627, 638 (2012) (quoting *Hensley,* 461 U.S. at 434); *see also Carrington*, 83 Fed. Cl. at 323 (noting that excessive hours should be excluded from an award).  However, special masters are not required to perform a line-by-line analysis of the billing records.  *Broekelschen v. Sec'y, HHS,* 102 Fed. Cl. 719, 729 (2011).

Respondent describes this case as "a fairly straightforward case in which counsel entered his appearance following the conclusion of the OAP, filed some medical records, and then requested the case to be dismissed."  Response at 6.  That description does not accurately reflect the service and work of petitioners' counsel.  In addition to filing them, petitioners' counsel reviewed the medical records to determine whether there was a basis to continue to pursue this claim, explained the result of his

---

[15] Should better justification be provided in future cases for Mr. Karz-Wagman's hourly rate, I will certainly revisit this decision on his 2013 hourly rate.

[16] According the U.S. Department of Labor, Bureau of Labor Statistics CPI Inflation Calculator (http://www.bls.gov/data/inflation_calculator.htm) $190.00 in 2012 has the same buying power as $192.78 in 2013.

review with petitioners, and obtained their permission to dismiss this case. Based on the billing records, his work involved consulting with an expert. Motion-Tab D at 2 (4/1/13 entry noting Mr. Gage's call with Dr. Kinsbourne).

While Mr. Gage's dedication to assisting formerly pro se petitioners is commendable, it does not constitute a blank check for biling either his own hours or for those hours that reflect a new counsel's learning curve.[17] Mr. Karz-Wagman billed at least 11.5 hours[18] for reviewing medical records and at least 5 hours for drafting a medical chronology. The case record consists of 14 exhibits containing approximately 675 pages of records. Over half of pages were filed in Exhibit 7, which contains occupational, physical, and speech therapy visits notes spanning October 2007 to October 2009, which are generally not particularly relevant to the issue of causation. In my experience, reviewing and summarizing the medical records filed in this case should not have taken 16.5 hours. I will reimburse 10 hours for reviewing the records and 2.5 hours for drafting the chronology.

As discussed above, the use of block billing is discouraged in the program as it hampers the review of billing records and the determination of what a reasonable amount of time for the activity performed is. For example, as noted by respondent, Mr. Karz-Wagman, Mr. Gage, and Ms. Stevens all used block billing for their work on this case on October 1, 2012. Therefore, it is impossible to determine how much of the collective 8.7 hours billed by them was spent drafting the amended petition, communicating with petitioners, or engaged in interoffice meetings. I will reduce the hours billed by each of them on October 1, 2012 by 50%. Additionally, the hours billed by Mr. Gage on April 1, 2013 and by Ms. Stevens on February 8, 2012 and August 16, 2012 will similarly be reduced by 50% to account for the misuse of block billing.

After applying these reductions to the hours billed , I will compensate petitioners' counsel for the following number of hours:

|  | 2012 | 2013 |
|---|---|---|
| Richard Gage, Esq. | 4.90 | 7.10 |
| Harley Karz-Wagman, Esq. | 14.05 | 2.50 |
| Paralegals | 14.05 | 5.70 |

B. Litigation Costs.

In addition to reasonable attorneys' fees, petitioners in the Vaccine Program may be awarded reasonable litigation costs. § 15(e)(1). Costs that are not adequately documented may be disallowed. *Sabella v. Sec'y, HHS*, 86 Fed. Cl. 201, 209 (2009);

---

[17] *See Carter v. Sec'y, HHS,* No. 04-1500V, 2007 WL 2241877, at *5 (Fed. Cl. Spec. Mstr. July 13, 2007) (noting that "[A]n an inexperienced attorney may not ethically bill his client to learn about an area of the law in which he is unfamiliar. If an attorney may not bill his client for this task, the attorney may also not bill the Program for this task.").

[18] This total does not include any of the time billed by Mr. Katz-Wagman on October 1, 2012.

*Ceballos v. Sec'y, HHS*, No. 99-97V, 2004 WL 784910, at *13 (Fed. Cl. Spec. Mstr. Mar. 25, 2004).

  1. Costs Personally Incurred by Petitioners.

  General Order #9[19] requires a statement be attached to petitioner's request for fees that delineates which litigation expenses were personally incurred by petitioner versus those sustained by petitioner's counsel. With their motion, petitioners included an affidavit signed by Mrs. Holliday which stated "[u]nder penalty of law, I certify that my actual expenses incurred in pursuing this Vacccine Program case are $1,000.00." Motion-Tab C. In their reply brief, petitioners included a second affidavit claiming $760.00 in expenses and an itemized list of their expenses. The itemized list does not indicate the specific dates when the expenses were incurred or provide other relevant information, such as the name of the provider whose records were requested.

  I will award the full amounts requested for the filing fee ($250) and for postage ($90). With regard to the remaining $420 sought by petitioners, $400 is associated with requests for medical records and $20 was spent on binders to hold medical records. Petitioners' records were submitted electronically, and thus the binders were not filed with the court and were unneeded. Based on my experience in evaluating records production costs, in OAP cases in particular (*see Hughes*, 2010 WL 558441), $400 is excessive in the absence of invoices. In the absence of supporting documentation, petitioners' medical record costs are reduced to $200.

  2. Costs Incurred by Petitioners' Counsel.

  Respondent has no objections to the $120.06 in costs requested by petitioners' counsel. I find that the expenses were reasonably incurred and will award the full amount requested.

### IV. Conclusion.

  I hold petitioners are entitled to reasonable attorneys' fees and costs pursuant to §§ 15(b) and (e)(1). For the reasons contained herein, **I hereby award $8928.40,[20] which shall be paid as follows:**

---

[19] General Order #9 is available on the court's website, http://www.uscfc.uscourts.gov/sites/default/files/General%20Order%20No.%209.pdf.

[20] This amount is intended to cover all legal expenses incurred in this matter. This award encompasses all charges by the attorney against a client, "advanced costs" as well as fees for legal services rendered. Furthermore, 42 U.S.C. § 300aa-15(e)(3) prevents an attorney from charging or collecting fees (including costs) that would be in addition to the amount awarded herein. *See generally Beck v. Sec'y, HHS*, 924 F.2d 1029 (Fed. Cir.1991).

- **a lump sum of $8,388.40 in the form of a check payable jointly to petitioners and petitioner's counsel of record for petitioners' attorney fees and costs, and**

- **a lump sum of $540.00 in the form of a check payable to petitioners, Terri S. Holliday and Michael D. Holliday, for their personal litigation costs.**

The clerk of the court shall enter judgment in accordance herewith.[21]

**IT IS SO ORDERED.**

                                          **s/Denise K. Vowell**
                                          Denise K. Vowell
                                          Chief Special Master

---

[21] Entry of judgment can be expedited by each party's filing of a notice renouncing the right to seek review.  *See* Vaccine Rule 11(a).